SEMNAR & HARTMAN, LLP
Babak Semnar, Esq. (SBN 224890)
Bob@SanDiegoConsumerAttorneys.com
Jared M. Hartman, Esq. (SBN 254860)
Jared@SanDiegoConsumerAttorneys.com
41707 Winchester Road, Suite 201
Temecula, CA 92590
PH: 951-293-4187
Fax: 888-819-8230

MEYER WILSON CO., LPA
Matthew R. Wilson, Esq. (SBN 290473)
Mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
Mboyle@meyerwilson.com
1320 Dublin Road, Suite 100
Columbus, OH 43215
PH: 614-224-6000
Fax: 614-224-6066

Attorneys for Plaintiff, JOSEPH MOORHEAD

**IN THE U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH MOORHEAD, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>HKA ENTERPRISES, LLC,<br><br>Defendant. | Case No.: '18CV2490 L    LL<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>1. **FEDERAL FAIR CREDIT REPORTING ACT - 15 U.S.C. §1681e; and**<br>2. **FEDERAL FAIR CREDIT REPORTING ACT - 15 U.S.C. §1681k** |

Plaintiff Joseph Moorhead, on behalf of himself and all others similarly situated, files this Class Action Complaint against Defendant HKA Enterprises, LLC ("HKA" or

"Defendant") for violations of the Fair Credit Reporting Act. Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows.

## NATURE OF THE CASE

1. This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*. ("FCRA") brought on behalf of a Class against a Defendant that procures and uses background information for employment purposes.

2. The FCRA regulates the use of "consumer reports" for employment purposes, commonly called "background reports." By enacting the FCRA, Congress found there is a need to insure that consumer reporting agencies ("CRAs") exercise their important responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. Moreover, Congress included in the statutory scheme a series of protections that impose strict rules on "users of consumer reports," such as Defendant in this case. These rules ensure that individuals, such as Plaintiff, are afforded their substantive rights established under the Fair Credit Reporting Act. Specifically, pertaining to employment-related background checks, the FCRA provides that a prospective employee must give consent to the background check, which includes both disclosure and authorization. *The authorization and disclosure forms must stand alone.* Additionally, users of consumer reports, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, must provide job applicants, such as Plaintiff, with a copy of their respective reports *and* a written summary of their rights under the FCRA. This class action involves Defendant's systematic violations of those rules protecting Plaintiff's and class members' important substantive rights.

3. In order to screen or check job applicants' backgrounds, users of consumer reports are required by the FCRA to: (1) disclose in writing to the consumer, "in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes," and (2) obtain written consent or permission from the

applicant. 15 U.S.C. § 1681b(b)(2).

4. In violation of 1681b(b)(2)(A)(i), HKA procured a background check on Plaintiff that relied on a form that did not contain a conspicuous disclosure in a document *that consists solely of the disclosure.*

5. As a result, in violation of 1681b(b)(2)(A)(ii), HKA has obtained consumer reports without proper authorization. HKA's failure to obtain the proper and statutorily required consent or authorization triggers statutory damages under the FCRA - of not less than $100 and not more than $1,000 for each violation - in which HKA obtained a consumer report without valid disclosure and authorization, as well as punitive damages, equitable relief, and attorneys' fees and costs.

6. In addition, when using background reports for employment purposes, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, the entity taking such adverse action must provide job applicants like Plaintiff with a copy of their respective reports *and* a written summary of their rights under the FCRA ("pre-adverse action notification"). 15 U.S.C. § 1681b(b)(3).

7. In violation of 15 U.S.C. § 1681b(b)(3), HKA willfully failed to comply with the FCRA's mandatory pre-adverse action notification requirement *twice*: (1) it did not send notice to Plaintiff until *after* it had already adjudicated his background grade as "Fail," and (2) it did not provide Plaintiff a copy of any report or written notice until *after* the decision had been made not to extend him an employment offer or continue his on-boarding process. Moreover, HKA failed to inform Plaintiff that its adjudication of his status as "Fail" constituted an adverse employment action, and that he would not be hired. By using consumer reports to make adverse employment decisions without, beforehand, providing the person who is the subject of the report sufficient and timely notification, a copy of the report, a summary of rights under the FCRA, or any opportunity to correct any errors on the report, HKA effectively leaves the person who is the subject of the report without any means to challenge the contents of the report or

**Complaint for Damages and Injnctive Relief**

to even know who prepared the background report. HKA's actions trigger statutory damages under the FCRA in the amount of not less than $100 and not more than $1,000 for each violation. Plaintiff and class members are also entitled to punitive damages, equitable relief, and attorneys' fees and costs.

8. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself and a Class of similarly situated employment applicants whose vital substantive rights under FCRA have been violated and/or abridged by Defendant.

## PARTIES

9. Plaintiff Joseph Moorhead is a "consumer" as protected and governed by the FCRA, and resides in Escondido, California.

10. Defendant HKA Enterprises, LLC is a for-profit limited liability company incorporated under the laws of Delaware, with its principal place of business in Duncan, South Carolina.

## JURISDICTION & VENUE

11. The Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

12. Defendant regularly conduct business within the State of California, and maintains a principal place of business in California at 511 Honey Lake Court, City of Danville, CA, and maintains an agent for service of process at the same location. Therefore, personal jurisdiction is established.

13. The Court has personal jurisdiction over the Defendant because it regularly transacts business in California, and the events giving rise to this cause of action occurred primarily within the State of California.

14. Venue is proper in this District because the Court has personal jurisdiction over all parties, and the majority of event giving rise to this cause of action occurred in this District.

**Complaint for Damages and Injnctive Relief**

# FACTUAL ALLEGATIONS

15. Plaintiff's lawsuit against HKA arises from a position that Plaintiff applied for with HKA on or about April 11, 2017.

16. HKA's initial application purported to disclose and require Plaintiff to consent to a background check as part of the employment hiring process. However, the "consent" form included many other disclosures in addition to the disclosed requirement of a background check. The disclosure form was not a "clear and conspicuous disclosure . . . in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes" as required by section 1681b(b)(2)(A)(i) for the FCRA.

17. Instead, the application itself contained a small text box "to be read and signed by the applicant." Rather than the "clear and conspicuous disclosure" that HKA would be obtaining a background check report on the Plaintiff, the text box ambiguously states that "I authorize HKA to make such investigations an[d] inquiries of my personal, employment, and other related matters to the extent necessary to arrive at an employment decision." Based on that "disclosure," Plaintiff had no way to know that HKA would, in fact, cause a *background check* to be conducted on him.

18. In addition, the Disclosure Form unlawfully included the following improper and extraneous language that distracts the consumer from the purpose of the stand-alone disclosure, which is simply to inform the consumer "that a consumer report may be obtained for employment purposes." The extraneous and distracting language in the Disclosure Form includes, but is not limited to, the following:

- "I hereby authorize employers, schools, and other persons to release the information requested and I hereby release such providers of information from all liability in responding to inquiries and releasing information in connection with my application."
- "In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in

discharge. I also understand that I am required to abide by all rules and regulations of the Company and its Clients."

- "This certified that this application was completed by me and that all entries and information in it are true and complete to the best of my knowledge and I understand that any misleading or false information shall subject me to discipline up to and including termination."

19.  Plaintiff was interviewed on or about April 6, 2017, and was given a conditional offer of a job with HKA on or about April 10, 2017. During the interview process, and on the application, Plaintiff disclosed that he was convicted of two criminal offenses and served three years of probation for those offenses. More specifically, Plaintiff pled guilty to one count of assault pursuant to California Penal Code § 245(a)(4) and kidnapping pursuant to Penal Code § 207(a). As part of the plea bargain under which he received probation, he was required to register as a sex offender pursuant to Penal Code § 290 only for the duration of the probation. The term of probation automatically expired by law and court order on April 6, 2017, as no allegations of violation of probation had ever been filed against him.

20.  On July 17, 2017, the County of San Diego Superior Court set aside those convictions, withdrew Plaintiff's guilty pleas, and dismissed the charges against Plaintiff pursuant to Penal Code § 1203.4(a). The process of having these convictions expunged was in process at the time Plaintiff applied for a job with HKA. Plaintiff disclosed to HKA in his application that the convictions were in the process of being expunged. The charges ultimately were, in fact, expunged.

21.  After HKA informed Plaintiff on or about April 10, 2017 of its intent to hire him, Plaintiff ceased his job search. He did not fill out any additional applications with potential employers and he stopped sending out his resume.

22.  However, on or about April 20, 2017, HKA ultimately made the decision to revoke Plaintiff's conditional offer of employment and to not move forward with him as a candidate for the position that had been previously offered.

**Complaint for Damages and Injunctive Relief**

23.  HKA did not notify Plaintiff of this decision until a telephone call on or about May 26, 2017, more than one month after its decision was made.

24.  On or about May 26, 2017, Plaintiff was informed orally via telephone call that his conditional offer was revoked as a result of "a problem with the background check." HKA did not give Plaintiff any details other than just to inform him that there was "a problem with the background check." Plaintiff did not receive any written documentation at any time from any source regarding the revocation of his conditional offer, or a copy of the background check, in April or May 2017.

25.  Plaintiff then conducted his own search on Google to determine who the background check company is that HKA regularly utilizes, and Plaintiff then contacted that company directly to obtain a copy of the final report that the company collated based on all information it obtained and provided to HKA.

26.  In doing so, Plaintiff was forced to undertake his own initiative to obtain documentation showing that HKA received a background check report from the company it hired to obtain such a background check, Employment Screening Services, and that based on the report, HKA decided to revoke the conditional offer of employment on a preliminary basis on or about April 20, 2017, which was not communicated to Plaintiff until on or about May 26, 2017. Neither the report nor the potential adverse action were communicated to Plaintiff prior to the conditional offer being revoked.

27.  As a company in the business of obtaining background checks for employment purposes, HKA knew or should have known that its form, which did not contain a stand-alone disclosure, was in violation of the FCRA. The statutory language of section 1681b(b)(2)(A) is clear that no entity can procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a

document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i).

28. Besides being in clear contravention of the FCRA, HKA creates a real risk of harm to applicants for employment when it procures background reports without insisting on a proper and statutorily compliant disclosure form. A form in which the disclosure is buried in one section of a larger document results in information overload, which inhibits a consumers' ability to agree to a background check with full knowledge of their rights and the potential consequences.

29. As a result of HKA's failure to comply with the disclosure and authorization requirements of the FCRA, Plaintiff suffered concrete harm—he was deprived of the disclosure that was necessary for him to give informed consent to a background check. In subsequently obtaining Plaintiff's background report without proper authorization, Plaintiff suffered additional harm when his statutory right to privacy was invaded.

30. Upon receiving the first report in April 2017, HKA had an obligation to provide a copy of the report to Plaintiff, along with a written pre-adverse event notice, and provide an opportunity to challenge the contents of the report, as required by 15 U.S.C. § 1681b(b)(3). Had it done so, Plaintiff would have been able to inform HKA that the information it had received was *incorrect*, since he was not, in fact, on the sex offender registry at the present time, contrary to the findings of the background check.

31. As a result of HKA's failure to comply with the pre-adverse notification requirements of FCRA by failing to send notice to Plaintiff before adjudicating him as "fail," Plaintiff suffered additional concrete harm—he was deprived of information the he was entitled to receive by statute, including a copy of his report ("informational injury") before the adjudication of his employment status.

32. Because Plaintiff was not provided any notice of pre-adverse action and/or a copy of his background check in April 2017, and waited until May 26, 2017 to only notify Plaintiff verbally via telephone call, HKA caused Plaintiff to suffer additional

concrete harm in the form of lost time that could have been used looking for a new job—he had discontinued his job search and had no reason to believe he should restart his search—as well as such opportunities he may well have missed during that time.

33. HKA caused Plaintiff to suffer additional concrete harm by not giving him an opportunity to review, verify, or correct any information in the consumer report before denying him an employment opportunity. Because the report HKA received was erroneous in several respects, this likely deprived him of employment with HKA.

## CLASS ACTION ALLEGATIONS

34. Pursuant to Fed. R. Civ. P. 23 and FCRA § 1681b(b), Plaintiff brings this action on behalf of himself and on behalf of the following Classes:

(a) All natural persons residing within the United States and its Territories with respect to whom, within seven years prior to the filing of this action and extending through the resolution of this action, HKA procured or caused to be procured a consumer report for employment purposes without a stand-alone written disclosure ("Class A").

(b) All natural persons residing within the United States and its Territories: (1) within seven years prior to the filing of this action and extending through the resolution of this action; (2) who were the subject of a background report procured or caused to be procured by HKA; (3) that was used to make an adverse employment decision regarding such employee or applicant for employment; and (4) who HKA failed to notify of a forthcoming adverse action and/or failed to provide the applicant an understandable copy of his or her consumer report or a copy of the FCRA summary of rights before it took such adverse action ("Class B").

35. Plaintiff reserves the right to amend the definition of the classes based on discovery or legal development.

9
**Complaint for Damages and Injnctive Relief**

36. Plaintiff and all Class members have been harmed by the acts of Defendant. Plaintiff and members of Class A and Class B have suffered an invasion of their privacy and been deprived of substantive rights granted to them by the Fair Credit Reporting Act.

37. Plaintiff and members of Class A have suffered concrete informational harm by HKA's failure to obtain proper consent, which unfairly deprived them of relevant information.

38. Plaintiffs and members of Class A have suffered concrete harm and been deprived of their ability to meaningfully authorize a consumer background report.

39. Additionally, Plaintiff and all members of Class B have suffered informational harm when the background reports they received contained insufficient information to assess their accuracy.

40. Plaintiff and members of Class B have suffered concrete informational harm when they were deprived of pre-adverse notices entitled to them under the Fair Credit Reporting Act.

41. Plaintiff and members of Class B have suffered concrete harm because HKA deprived them of their right to review their reports and challenge their accuracy before adjudicating them as "Fail" and adverse action was taken.

42. Plaintiff and members of Class B have suffered concrete harm in that they were subject to a real risk of harm by HKA's failure to send a pre-adverse event notice before denying employment opportunities, because even when the information in the report is true, it may be amenable to contextual explanation, and Plaintiff and Class members were deprived of the opportunity to provide such context.

43. HKA acted on grounds generally applicable to both Classes, thereby making final relief with respect to the Classes as a whole appropriate.

44. This Class Action Complaint seeks money damages for each member of the Classes pursuant to the statutory damages provision of 15 U.S.C.§ 1681n(a)(1)(A),

punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3), and/or appropriate declaratory/injunctive relief.

45. Upon information and belief, Plaintiff alleges that the Class members are so numerous that joinder is impractical. The names and addresses of the Class members are identifiable through documents maintained by HKA, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

46. Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

- Whether HKA willfully violated Section 1681b(b)(2) of the FCRA by procuring or causing to be procured consumer reports for employment purposes without obtaining a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes;
- Whether HKA failed to provide notice of a pending adverse employment decision based on the background check to the applicant or employee at least five business days before declining to hire or discharging the applicant or employee based on the results thereof (§1681b(b)(3)(A)(i));
- Whether by sending an unclear report without adequate information to assess the accuracy of its findings, HKA failed to provide a copy of the consumer report to the applicant or employee at least five business days before declining to hire or discharging the applicant or employee based on the results thereof (§1681b(b)(3)(A)(i));
- Whether HKA failed to provide a copy of a summary of the applicant or employee's rights under the FCRA before declining to hire or discharging the applicant or employee (§1681b(b)(3)(A)(ii));

- Whether HKA acted willfully in disregard of the rights of employment applicants in its failure to permit its employees and automated systems to send employment applicants their full consumer report and a written statement of their FCRA rights at least five business days before taking adverse action based on the consumer report.
- Whether Class members are entitled statutory damages, and if so, in what amount;
- Whether Plaintiff and other Class members are entitled to declaratory, injunctive, or other equitable relief.

47. Plaintiff's claims are typical of the claims of each Class member. Plaintiff makes the same claims that he makes for the Class members and seeks the same relief that it seeks for the Class members. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of both Classes, and Defendant has acted in the same manner towards Plaintiff and all Class members.

48. Plaintiff is an adequate representative of the Classes because his interests coincide with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of the members of the Classes.

49. In addition to certification under Fed. R. Civ. P. 23(b)(3), Plaintiff also seeks certification under Fed. R. Civ. P. 23(b)(2), in that Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief and/or corresponding declaratory relief is appropriate respecting the Classes as a whole.

50. Plaintiff has standing to seek an injunction against Defendant in that he could seek future employment from HKA, and thus would be again subject to the improper and illegal background check procedures.

51. Plaintiff and all Members of Class A seek an injunction and/or corresponding declaratory relief stipulating that: a) HKA must, prior to obtaining a prospective employee's authorization to procure a background report, produce in a clear and conspicuous manner a disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes, and b) that HKA may not procure or cause to be procured a copy of the prospective employee's consumer report without first obtaining proper authorization and consent from the prospective employee.

52. Plaintiff and all members of Class B seek an injunction and/or corresponding declaratory relief stipulating that HKA must, prior to taking any adverse action against a prospective employee based in whole or in part on the prospective employees consumer report, provide the consumer with the following: (a) the required Pre-Adverse Action Notice that explains to the applicant in clear and unambiguous words the forthcoming adverse action; (b) a copy of the consumer report; and (c) a written description of the consumer's rights under the FCRA.

53. Pursuant to Fed. R. Civ. P. 23(b)(3), the questions of law and fact in this case that are common to all Class members predominate over individual issues (if any) because the key issues that need to be resolved pertain to HKA's procedures and knowledge and so do not vary from one Class member to another.

54. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system present by the complex legal and factual issues raised by HKA's conduct. By contrast,

**Complaint for Damages and Injunctive Relief**

the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

55. Plaintiffs may seek partial certification under Fed. R. Civ. P. 23(c)(4) in that questions of law and fact common to the class exist as to all Class members. Such a partial certification would be in the alternative to certification under Fed. R. Civ. P. 23(b)(2) and/or (b)(3).

## CLAIMS FOR RELIEF

## COUNT ONE:

**Failure to Obtain Proper Authorization in Violation of the FCRA**

**(On Behalf of Plaintiff and Class A), 15 U.S.C. § 1681b(b)(2)(A)(ii)**

56. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

57. HKA violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by procuring, or causing to be procured, consumer reports relating to Plaintiff and other Class members, without proper authorization. By failing to require the disclosure and authorization forms to contain a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes, HKA failed to obtain proper authorization from Plaintiff and Class members.

58. HKA's violations were willful. HKA acted in deliberate disregard of its obligations and the rights of Plaintiff and other Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).

59. HKA caused Plaintiff and Class members to suffer concrete harm and damages by not insisting that the individuals for whom HKA was obtaining background information were fully aware of their rights and protections under the FCRA. Plaintiff and Class members suffered further concrete harm when their privacy

1. was invaded by the procurement of their consumer without proper consent and authorization.

60. Plaintiff and the Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for every violation of the FCRA pursuant to 15 U.S.C. § 1681n(a)(1)(A).

61. Additionally, Plaintiff and Class members seek an injunction and/or corresponding declaratory relief stipulating that HKA may not procure or cause to be procured a copy of the prospective employee's consumer report without first obtaining proper authorization and consent from the prospective employee.

## COUNT TWO:
**Failure to Provide Pre-Adverse Action Notification, the Consumer Report, and a Copy of the Consumer's Rights in Violation of the FCRA**
**(On Behalf of Plaintiff and Class B), 15 U.S.C. § 1681b(b)(3)(A)**

62. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

63. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part of the report," must provide the consumer with a copy of the report and a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. 1681b(b)(3)(A).

64. For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

65. HKA meets the definition of a "person," and regularly uses background reports for employment purposes. 15 U.S.C. §§1681b(b)(3)(A)(i) and (ii).

66. HKA willfully violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Class the following before using such report:

(a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and (c) a written description of the consumer's rights under the FCRA.

67. HKA caused Plaintiff and Class members to suffer concrete harm by not making them fully aware of their substantive rights and protections under the FCRA.

68. HKA did not provide Plaintiff or Class members the proper pre-adverse action notice before taking the adverse action based on his or her background report.

69. HKA caused Plaintiff and Class members to suffer concrete harm by making adverse employment decisions without providing Plaintiff or Class members an opportunity to review, verify, or correct background reports.

70. Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for every violation of the FCRA pursuant to 15 U.S.C. § 1681n(a)(1)(A).

71. Additionally, Plaintiff and all Class members seek an injunction and/or corresponding declaratory relief stipulating that HKA must, prior to taking any adverse action against a prospective employee based in whole or in part on the prospective employees consumer report, provide the consumer with the following: (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and (c) a written description of the consumer's rights under the FCRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

1. An order certifying the proposed FCRA classes herein under Federal Rule 23 and appointing Plaintiff and his undersigned Counsel as representatives of record to represent the same;

2. As a result of HKA's willful violation of 15 U.S.C. § 1681b(b)(2)(A)(i), Plaintiff seeks for himself and each member of Class A damages, as provided by statute, of between $100 and $1,000 per violation;

3. As a result of HKA's willful violation of 15 U.S.C. § 1681b(b)(3)(A), Plaintiff seeks for himself and each member of Class B damages, as provided by statute,

16
**Complaint for Damages and Injnctive Relief**

of between $100 and $1,000 per violation;

4. As a result of Defendant's willful violations of 15 U.S.C. § 1681b(b)(2)(i), 15 U.S.C. § 1681b(b)(2)(ii), and 15 U.S.C. § 1681b(b)(3)(A), Plaintiff seeks punitive damages in an amount determined at trial;

5. That the Court award costs and reasonable attorneys' fees to Plaintiff and the Class;

6. An award of pre-judgment and post-judgment interest as provided by law; and

7. That the Court grants such other and further relief as may be just and proper, including but not limited to any injunctive and/or declaratory relief that may be permitted.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED: October 30, 2018            */s/ Jared M. Hartman*

SEMNAR & HARTMAN, LLP
Babak Semnar
Jared M. Hartman
41707 Winchester Road, Suite 201
Temecula, CA 92590
Telephone: (951) 293-4187
Facsimile: (888) 819-8230