**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| **JOSEPH MOORHEAD**<br>*individually and on behalf of all others*<br>*similarly situated,* | |
| **Plaintiff,** | **Case No.: 7:19-cv-00265-DCC** |
| **v.** | |
| **HKA ENTERPRISES, LLC,** | **District Judge Donald C. Coggins, Jr.** |
| **Defendant.** | |

**PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Page

Introduction…………………………………………………………………….....  1

Summary of the Settlement……………………...…………………………….…..  2

Argument………………………………………………………………………….  4

I.  The Settlement Will Likely Be Approved As Fair, Reasonable, and Adequate……….….…  4

    A.    The Class Representatives and Class Counsel have adequately represented the Classes ………………………………………………………….……....  5

    B.    The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion………………….………......….….…....  8

    C.    The Settlement provides substantial relief for the Classes…....………….…….  9

        1.    Diverse and substantial legal and factual risks weigh in favor of settlement ..…………………………………….…………………  9

        2.    The monetary terms of this proposed settlement fall favorably within the range of prior FCRA class action settlement….…………  10

        3.    The method of providing relief is effective and treats all members of the Classes fairly ..…………………………………….…....…….…  12

        4.    The proposed award of attorneys' fees is fair and reasonable ………..  13

II.  The Settlement Satisfies Rule 23…………………………………………..  14

    A.    The members of the class are so numerous that joinder of all of them is impracticable …………………………………………….……....  14

    B.    Questions of law and fact are common to the members of the class ….....….....  15

    C.    Plaintiff's claims are typical of the claims of the members of the class he represents …....………………………………………………………  16

    D.    The questions of law and fact common to the members of the class predominate over any questions potentially affecting only individual members …......……...  17

    E.    A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class ….…………….…………  18

III.  The parties' notice plan satisfies the requirements of Rule 23 and due process requirements …………………………………………………………..…  19

Conclusion……………………………………………………………………  20

i

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 17, 18

*Arthur v. Sun Trust Bank.*, 2012 U.S. Dist. LEXIS 97933 (D.S.C. July 12, 2015) ........ 8, 9, 15, 19

*Ashley v. GAF Materials Corp.,* 2014 U.S. Dist. LEXIS 183679 (D.S.C. Oct. 15, 2014) ............ 9

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993) ................................... 14

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .......................................................... 8

*Daughtrey v. Ocwen Loan Servicing, LLC,* 701 F.App'x 246 (4th Cir. 2017) ......................... 10

*Eisen v. Carlisle & Jacquelin,*417 U.S. 156 (1974) .................................................................. 19

*Faile v. Lancaster County*, 2012 U.S. Dist. LEXIS 189610 (D.S.C. Mar. 8, 2012) ................... 13

*Ford v. CEC Entertainment*, 2015 U.S. Dist. LEXIS 191966 (S.D.Cal. Dec. 14, 2015) ............ 11

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ...... 16

*Grady v. de Ville Motor Hotel, Inc.,*415 F.2d 449 (10th Cir. 1969) ......................................... 11

*Gray v. Talking Phone Book,* 2012 U.S. Dist. LEXIS 200804 (D.S.C. Aug. 10, 2012) ............. 13

*Grice v. PNC Mortg. Corp. of America*, 1998 U.S. Dist. LEXIS 23875 (D. Md. May 21, 1998) . 6

*Hanlon v. Chrysler Corp.,*150 F.3d 1011 (9th Cir. 1998) ......................................................... 11

*Hillson v. Kelly Servs.*, 2017 U.S. Dist. LEXIS 127717 (E.D.Mich. Aug. 11, 2017) ........... 11, 16

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011) ................................ 8

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ....................... 9, 11

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ..................................................... 4, 6

*In re Kirschner Medical Corp. Sec. Litig.,* 139 F.R.D. 74 (D.Md. 1991) .................................. 17

*In re Mi Windows & Doors Prods. Liab. Litig..,* 2015 U.S. Dist. LEXIS 184471 (D.S.C. July 22, 2015) ........................................................................................................................................ 11

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998) ........................................... 5

*In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) .................................. 8

*Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ..................... 8

*Jones v. Dominion Resources Services, Inc.*, 601 F. Supp. 2d 756 (S.D. W. Va. 2009) .............. 14

*Kirven v. Cent. States Health & Life Co.,* 2015 U.S. Dist. LEXIS 36393 (D.S.C. Mar. 23, 2015) 7

*Manuel v. Wells Fargo Bank*, 2016 U.S. Dist. LEXIS 33708 (E.D.Va. Mar. 15, 2016) .............. 11

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) ................................ 8

*Reed v. Big Water Resort, LLC,* 2016 U.S. Dist. LEXIS 187745 (D.S.C. May 26, 2016) ... 4, 5, 16

*Robinson v. Carolina First Bank, N.A.,* 2019 U.S. Dist. LEXIS 103831 (D.S.C. June 21, 2019) ................................................................................................................................................. 13, 17

*Robinson v. Carolina First Bank, N.A.,* 2019 U.S. Dist. LEXIS 26450 (D.S.C. Feb. 14, 2019).... 7

*Rowles v. Chase Home Fin.*, 2012 U.S. Dist. LEXIS 3264 (D.S.C. Jan. 10, 2012) ................... 10

*S. Carolina Nat. Bank v. Stone,* 139 F.R.D. 325 (D.S.C. 1991) .................................................. 7

*S. Carolina Nat. Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) ............................................. 5

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) .......... 10

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346 (C.D. Cal. June 15, 2010) .......... 8

*Singleton v. Domino's Pizza*, 976 F. Supp. 2d 665 (D. Md. 2013) ........................... 11, 15, 16, 18

*Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499 (E.D. Va. 1995)). ............................ 6, 7

*Temporary Services, Inc.. v. Am. Int'l Grp., Inc.,* 2012 U.S. Dist. LEXIS 199143 (D.S.C. July 31, 2012)........................................................................................................................ passim

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016).......................... 17

*Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ........................... 15

*Williams v. Henderson*, 129 F. App'x. 806 (4th Cir. 2005)........................................................ 14

## Statutes

15 U.S.C. § 1681b(b)(2) ................................................................................................................ 1

15 U.S.C. § 1681b(b)(3)(A) ........................................................................................................... 1

## Other Authorities

Alba Conte & Herbert B. Newberg,
    Newberg on Class Actions (4th ed. 2002)........................................................................ 4, 10

Manual for Complex Litigation (4th ed. 2004)......................................................................... 4, 5

McLaughlin on Class Actions (8th ed. 2011) ............................................................................... 8

## Rules

Fed. R. Civ. P. 23(a) ............................................................................................................... 14, 15

Fed. R. Civ. P. 23(a)(1) ............................................................................................................... 14

Fed. R. Civ. P. 23(a)(2) ............................................................................................................... 15

Fed. R. Civ. P. 23(a)(3) ............................................................................................................... 16

Fed. R. Civ. P. 23(b)(3)........................................................................................................... 17, 18

Fed. R. Civ. P. 23(b)(3)(D) .......................................................................................................... 18

Fed. R. Civ. P. 23(c)(2)(A) .......................................................................................................... 20

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 19, 20

Fed. R. Civ. P. 23(c)(2)(C)(iii) .................................................................................................... 13

Fed. R. Civ. P. 23(e)(1) ............................................................................................................... 19

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................................................ 4

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................................ 5

Fed. R. Civ. P. 23(e)(2) ................................................................................................................. 5

Fed. R. Civ. P. 23(e)(2)(C)(ii)...................................................................................................... 12

## <u>INTRODUCTION</u>

The Fair Credit Reporting Act ("FCRA") regulates the access and use of background checks by employers with regard to employees or potential employees.  It requires that prospective employers obtain written consent to conduct a background check on a potential employee using a form that consists of "a clear and conspicuous disclosure … in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2).  Having obtained the background check, the prospective employer may not decline, withdraw, or terminate any offer of employment without first providing the prospective employee with a copy of the report and a written summary of his or her rights under the FCRA (known as a "pre-adverse action notification").  15 U.S.C. § 1681b(b)(3)(A).

Plaintiff Joseph Moorhead ("Plaintiff") filed this lawsuit on behalf of himself and other similarly-situated individuals who applied for employment with HKA Enterprises, LLC ("HKA"), alleging that they were presented with a deficient background check consent form, were not provided with a pre-adverse action notice, or (as in the case of Mr. Moorhead) both. Recognizing the risks of protracted litigation, the parties mediated the case with the experienced and highly respected mediator, Hunter Hughes of Atlanta, GA.  As part of the mediation process, the parties were able to hone in on the precise contours of the case, and agreed to an all-cash settlement totaling $450,000 for the benefit of three settlement classes. This is an excellent result considering the risks, uncertainties, burden, and expense associated with continued litigation.

Pursuant to the parties' agreement, Plaintiff now respectfully requests that this Court: (1) conditionally approve the parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiff as the class representative, (3)

appoint Plaintiffs' counsel as class counsel, (4) approve the proposed notice program as the best practicable under the circumstances that satisfies due process and Rule 23, (5) set a date for a final approval hearing, and (6) set deadlines for members of the settlement class to submit claims for compensation, and to object to or exclude themselves from the settlement.

HKA does not oppose this motion.

## SUMMARY OF THE SETTLEMENT[1]

The settlement calls for HKA to create a cash settlement fund of $450,000, *see* Exhibit 1, Settlement Agreement and Release ("Agr."), ¶ 2.35, to compensate the following class members:

**Settlement Class A:**  all natural persons residing within the United States and its Territories with respect to whom, within two years prior to the filing of this action and extending through the resolution of this action, HKA procured or caused to be procured a consumer report for employment purposes based on a disclosure form from one or more of the following background check vendors: AWSI, Backgroundchecks.com, ESS (the vendor applicable to Moorhead), and GIS.  The parties agree that there are 3,634 members of Settlement Class A as identified by HKA.

**Settlement Class B:** all natural persons residing within the United States and its Territories: (1) within two years prior to the filing of this action and extending through the resolution of this action; (2) who were the subject of a background report procured or caused to be procured by HKA based on a disclosure form other than that from the following background check vendors: AWSI, Backgroundchecks.com, ESS (the vendor applicable to Moorhead), and GIS; (3) that was used to make an adverse employment decision regarding such employee or applicant for employment; and (4) who HKA failed to notify of a forthcoming adverse action and/or failed to provide the applicant an understandable copy of his or her consumer report or a copy of the FCRA summary of rights before it took such adverse action.  The parties agree that there are 68 individuals who are members of Settlement Class B as identified by HKA.

**Settlement Class C:** all natural persons residing within the United States and its Territories: (1) within two years prior to the filing of this action and extending through the resolution of this action; (2) who were the subject of a background report procured or caused to be procured by HKA based on a disclosure form from one or more of the following background check vendors: AWSI, Backgroundchecks.com, ESS (the vendor

---

[1] Any undefined capitalized terms shall have the meaning attributed to them in the parties' Settlement Agreement, which is being submitted contemporaneously herewith.

applicable to Moorhead), and GIS; (3) that was used to make an adverse employment decision regarding such employee or applicant for employment; and (4) who HKA failed to notify of a forthcoming adverse action and/or failed to provide the applicant an understandable copy of his or her consumer report or a copy of the FCRA summary of rights before it took such adverse action. The parties agree that there are 73 individuals who are members of Settlement Class C as identified by HKA.

The "Class Period" is defined as October 30, 2016 through June 25, 2019. *Id.* at ¶ 2.10. Settlement Class Members will be sent notice by the settlement administrator[2] via a designated settlement website and by mail. *Id.* at ¶ 3.D.

The Settlement Fund will be allocated as follows: first, payments of settlement costs approved by the Court, which include the costs of notice and claims administration, attorneys' fees and expenses that the Court may approve, and any incentive award to the Class Representative that this Court may approve. *Id.* at ¶ 3.C.1. Next, each member of the respective classes who makes a timely and valid claim will be allocated a presumptive award based on class membership--$62.67 for members of Class A, $125.34 for members of Class B, and $188.02 for members of Class C. *Id.* at ¶ 3.F.1. Then, if the total amount to be paid to members of all three classes is less than half of the amount remaining in the Settlement Fund after attorneys' fees and costs, any incentive award, and claims administrator's fees are deducted, each Class Member will receive a pro-rated, proportional "settlement enhancement" to bring the amount paid to Class Members to the one-half threshold. *Id.* at ¶ 3.G.1-2. Only if the claimed amounts are less than half, the remainder of the Settlement Fund reverts to HKA. *Id.* at ¶ 3.G.4.

Class Members who do not exclude themselves from the Settlement will only release claims specifically tailored to the practices that give rise to this matter. In particular, the release is limited to the class members identified during the applicable class period and is limited to the

---

[2] Following a competitive bidding process, the parties have selected Kurtzman Carson Consultants ("KCC") as the claims administrator. *Id.* at ¶ 2.6.

facts that arise out of or relate to the facts or claims in this Action. *Id.* at ¶ 3.H.

## ARGUMENT

I.     **THE SETTLEMENT WILL LIKELY BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2)**

"Rule 23(e) requires that the court approve any proposed settlement or compromise in a class action suit after notice of the settlement be given to all class members, after a hearing, and after finding that the settlement is fair, reasonable, and adequate.'" *Reed v. Big Water Resort, LLC,* Case No. 2:14-cv-01583, 2016 U.S. Dist. LEXIS 187745, at * 14 (D.S.C. May 26, 2016) "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

Rule 23 – and particularly the portions dealing with class settlements – was amended in December, 2018. The first step in the amended process is a preliminary fairness determination. Specifically, the proposed terms of the settlement are submitted to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018).  This allows the Court make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.25 (4th ed. 2002).

The new rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on

the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement

would bind class members, it may only be approved after a final hearing and a finding that it is

fair, reasonable, and adequate, based on the following factors:

> (A)     the class representatives and class counsel have adequately represented the class;

> (B)     the proposal was negotiated at arm's length;

> (C)     the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and

reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement,

and date of the final fairness hearing." *Id.*; Fed.R.Civ.P. 23(e)(1)(B) (2018).

The next step in the process is a final fairness hearing. Fed.R.Civ.P. (e)(2) (2018); *also*

Manual for Complex Litigation, § 21.633-34

As explained below, consideration of these factors supports preliminary approval of the

Settlement and issuing notice.

**A.     The Class Representatives and Class Counsel have Adequately Represented the Classes.**

By their very nature, because of the many uncertainties of outcome, difficulties of proof,

and lengthy duration, class actions readily lend themselves to compromise. Indeed, "[t]here is a

'strong judicial policy in favor of settlements, particularly in the class action context.'" *Reed,*

2016 U.S. Dist. LEXIS at *14 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138

(2d Cir. 1998)); *see also S. Carolina Nat. Bank v. Stone*, 749 F. Supp. 1419, 1428 (D.S.C. 1990)

("settlement classes have proved to be quite useful in resolving major class action disputes...most courts have recognized their utility and have authorized the parties to seek to compromise their differences including class action issues through this means.")  This matter is no exception.

Against this backdrop, courts consider "the posture of the case at the time settlement was proposed" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating." *Jiffy Lube,* 927 F.2d at 159. At the same time, "District courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair." *Temporary Services, Inc.. v. Am. Int'l Grp., Inc.,* Case No. 3:08-cv-00271, 2012 U.S. Dist. LEXIS 199143, at **27-28 (D.S.C. July 31, 2012) (citing *Grice v. PNC Mortg. Corp. of America*, No. CIV. A. PJM-97-3084, 1998 U.S. Dist. LEXIS 23875, 1998 WL 350581 (D. Md. May 21, 1998); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995)).

Here, while the case is settling at an early stage of the proceedings, the parties are fully informed of the relevant facts in the case.  Prior to mediation, HKA provided copies of *all* of the relevant disclosure forms used by HKA during the course of the Class Period to Plaintiff's counsel, not just the ones that ultimately became part of the Settlement.  This discovery allowed Plaintiff to fully evaluate the strength of all possible claims and all possible scenarios.  In addition, HKA provided numerical data regarding the size of all the proposed classes, including data on the number of potential employees who did not receive pre-adverse action notices. While this discovery was provided informally and under settlement privilege, it is the same discovery that Plaintiff would have sought formally.  This reflects the fact that discovery in this matter is and would have been relative simple and limited—the relevant discovery here was the disclosure form templates and data regarding the number of affected individuals.

Moreover, before mediating, the parties briefed, in mediation statements they shared with one another and the mediator, the strengths and weaknesses of their respective positions. As such, the parties conducted "sufficient informal discovery and investigation to fairly evaluate the merits of [the d]efendants' positions during settlement negotiations." *Strang*, 890 F. Supp. at 501-02.

In addition, a plaintiff and counsel are adequate if "[counsel] fairly and adequately represent the interests of the class," and the plaintiff's "injuries are sufficiently similar to the injuries of the class members such that she is able to advance the claims of the entire class through proof of her own claim." *Robinson v. Carolina First Bank, N.A.,* Case No. 7:18-cv-02927, 2019 U.S. Dist. LEXIS 26450, at **18-20 (D.S.C. Feb. 14, 2019).

Here, Plaintiff's claims are aligned with the claims of the other class members. He thus had every incentive to vigorously pursue the claims of the class, as he has done to date by remaining actively involved in this matter since its inception, participating in discovery, and remaining involved in the settlement process. In addition, Plaintiff retained the services of law firms with extensive experience in litigating consumer cases, FCRA actions in particular, as well as with class actions.

"The adequacy of Plaintiff's counsel, like that of the individual Plaintiff, is presumed in the absence of specific proof to the contrary." *S. Carolina Nat. Bank v. Stone,* 139 F.R.D. 325, 330-31 (D.S.C. 1991); *see also Kirven v. Cent. States Health & Life Co.,* Case No. 3:11-cv-2149, 2015 U.S. Dist. LEXIS 36393, at * 14 (D.S.C. Mar. 23, 2015) ("While the opinions and recommendations of experienced counsel are not to be blindly followed by the trial court, such opinions should be given weight in evaluating the proposed settlement.").

Here, Plaintiffs' counsel believe that the parties' settlement is fair, reasonable, and

adequate, and in the best interests of the members of the class. Plaintiffs' counsel also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to trial.

**B.    The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also Arthur v. Sun Trust Bank.*, Case No. 8:09-cv-00415, 2012 U.S. Dist. LEXIS 97933, at * 9 (D.S.C. July 12, 2015) ("Courts will take into account whether a settlement was reached with the assistance of a respected and experienced mediator."); *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator[.]")[3]

Here, the Settlement Agreement resulted from good faith, arm's-length settlement negotiations, culminating in an in-person mediation session with Hunter Hughes. *See* Agr. at ¶

---

[3]    *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]"); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

1.C. Plaintiffs and HKA submitted detailed mediation submissions to Mr. Hughes and to one another setting forth their respective views as to the strengths of their cases. *Id.* Accordingly, it is clear that the parties negotiated their settlement at arm's-length, and absent any fraud or collusion. *See Arthur,* 2012 U.S. Dist. LEXIS 97933, at * 9 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator). Moreover, Mr. Hughes has mediated thousands of cases, including many FCRA background check class action cases similar to this one.

**C.    The Settlement Provides Substantial Relief for the Classes**

Plaintiff's and his counsel's zealous advocacy, the arm's-length nature of the Settlement, the relief afforded under the Agreement, and the equitable treatment to the Class all support a finding that the Settlement is fair, reasonable, and adequate. As further detailed below, the Settlement should be preliminarily approved with an order directing that notice be provided to the Class.

**1.    Diverse and substantial legal and factual risks weigh in favor of settlement.**

The Court must also consider "the likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ashley v. GAF Materials Corp.,* Case No. 8:11-mn-02000, 2014 U.S. Dist. LEXIS 183679, at * 22 (D.S.C. Oct. 15, 2014) (approving a settlement where "[t]he Settlement provides the Settlement Class with an immediate and substantial source of recovery while eliminating risks to the Settlement Class that further litigation would yield little or no recovery.")

With this in mind, while Plaintiff strongly believes in his claims, Plaintiff understands that HKA asserts some potentially case-dispositive defenses. For example, HKA contends that

Plaintiff cannot establish that it willfully violated the FCRA, which could limit any recovery to actual damages suffered as a result of the violation. *See Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) (defining "willfulness" under the FCRA to include "reckless disregard" of statutory obligations); see also *Daughtrey v. Ocwen Loan Servicing, LLC,* 701 F.App'x 246, 253 (4th Cir. 2017) ("A defendant may demonstrate reckless disregard of its statutory obligations by repeatedly ignoring warning signs that it is violating the law and by failing to take corrective action to prevent future violations.") Likewise, if damages were limited to actual damages, individualized questions represent a potential impediment to class certification.

While Plaintiff believes that HKA acted willfully with regard to its obligations under the FCRA, he recognizes that the prospect of success at trial is far from certain. Accordingly, Plaintiff's decision to settle his claims, and the claims of the members of the class, is reasonable. *See Rowles v. Chase Home Fin.*, Case No. 9:10-cv-01756, 2012 U.S. Dist. LEXIS 3264, at * 7 (D.S.C. Jan. 10, 2012) ("[t]he Parties dispute the validity of the claims in this litigation, and their dispute underscores not only the uncertainty of the outcome but also why the Court finds the Settlement Agreement to be fair, reasonable, adequate, and in the best interests of the Class Members.").

> **2.     The monetary terms of this proposed settlement fall favorably within the range of prior FCRA class action settlements.**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has

compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ."
*Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part,
because "[s]ettlement is the offspring of compromise; the question we address is not whether the
final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from
collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Mi
Windows & Doors Prods. Liab. Litig..,* Case No. 2:12-mn-00001, 2015 U.S. Dist. LEXIS
184471, at *38 (D.S.C. July 22, 2015) (noting that recoveries a proposed resolution must be
evaluated in light of the fact that "a settlement is a compromise. . . .")

Here, the parties agree to resolve this matter for a settlement fund of $450,000, under
which each class member who makes a claim is entitled to at least $62.67. This figure compares
well with other FCRA class action settlements involving background check disclosure forms that
courts have approved.  *See, e.g., Hillson v. Kelly Servs.*, No. 2:15-cv-10803, 2017 U.S. Dist.
LEXIS 127717 (E.D.Mich. Aug. 11, 2017) (approximately $30.51 per class member); *Manuel v.
Wells Fargo Bank*, Case No. 3:14-cv-00238, 2016 U.S. Dist. LEXIS 33708 (E.D.Va. Mar. 15,
2016) ($35 per class member); *Ford v. CEC Entertainment*, No. 14-cv-00677, 2015 U.S. Dist.
LEXIS 191966 (S.D.Cal. Dec. 14, 2015) ($38 per class member); *Singleton v. Domino's Pizza*,
976 F. Supp. 2d 665 (D. Md. 2013) ($54.75 per class member). Additionally, if a relatively small
number of class members elect to make claims, then the persons who *do* make claims will
receive a much greater amount.  The parties' settlement, therefore, falls within "a range of
reasonableness with respect to a settlement—a range which recognizes the uncertainties of law
and fact in a particular case and the concomitant risks and costs necessarily inherent in taking
any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see
also Temporary Services,* 2012 U.S. Dist. LEXIS 199143, at *15 ("[t]here was a substantial risk

that this case would conclude adversely to the interests of the Plaintiffs and the class, thus any compromise accepted by the Plaintiffs in agreeing to the sum of this settlement reflected the risks inherent in continuing litigation.").

3.    **The method of providing relief is effective and treats all members of the Classes fairly.**

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member relief: cash payments. Moreover, the allocation of the Settlement Fund among the Classes is straightforward. Members of Class A were exposed to allegedly deficient consent forms, and thus receive the base line award of one "share" of the settlement recovery. Members of Class B, who were not subject to the deficient forms but who were deprived of a chance to challenge any possible errors on their background as a result of not receiving the "pre-adverse action notice" suffered a more significant harm than members of Class A (in the form of a potential lack of an employment opportunity). As such, Members of Class B receive two "shares" of the recovery. Finally, members of Class C are individuals (such as the Plaintiff) who fit into both categories—were subject to the contested consent forms *and* who did not receive a pre-adverse action notice. Members of Class C receive three "shares" of the settlement, or said another way, the amount

received by the members of Class A and Class B combined.

The claims process classes was designed to be accessible and straightforward. In order for those Class Members to make a claim, they need only to fill out a simple claim form on the Settlement website (*see* Agr. at Exs. 3), providing a simple certification. The third party settlement administrator will review claims for completeness, timeliness, and correctness. Claimants do not need to attach *any* documentary evidence for claims to be approved. This claims process is thus simple, straightforward, and accessible.

### 4.     The proposed award of attorneys' fees is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel will seek an award one-third of the common fun of $450,000; that is, they will seek $150,000, plus their reasonable expenses. Agr. ¶ 3.I.

This amount falls squarely in line with many other approved class settlements in this District. *E.g., Robinson v. Carolina First Bank, N.A.,* Case No. 7:18-cv-02927, 2019 U.S. Dist. LEXIS 103831, at * 36 (D.S.C. June 21, 2019) (approving an award of one-third of the value of the fund); *Faile v. Lancaster County,* Case No. 0:10-cv-02809, 2012 U.S. Dist. LEXIS 189610, at * 27 (D.S.C. Mar. 8, 2012) ("[o]ne-third of the recovery appears to be a fairly common percentage in contingency fee cases, especially where the total settlement amount is not so large as to produce a windfall to Plaintiffs' attorney(s) based solely on the number of class members."); *see also Gray v. Talking Phone Book,* No. 8:08-cv-01833-GRA, 2012 U.S. Dist. LEXIS 200804, at *8 (D.S.C. Aug. 10, 2012) ("Although the Fourth Circuit has not articulated a preferred method for determining fees in common-fund cases, there is a 'consensus among courts

that the percentage method is the superior method for calculating attorneys' fees from the common-fund. . . .'" (quoting *Jones v. Dominion Resources Services, Inc.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009)). Plaintiff's counsel achieved an excellent result for the Class after undertaking substantial risk in prosecuting this action on a pure contingency basis, and they should be fairly compensated.

Prior to final approval, Plaintiff's counsel will file a separate motion for their requested award of attorneys' fees and expenses, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Class Notice.

## II.        THE SETTLEMENT SATISFIES RULE 23.

### A.        The members of the class are so numerous that joinder of all of them is impracticable.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Although there is no specific rule on how many members a class must have, the Fourth Circuit has indicated that a class with over thirty members justifies a class." *Temporary Services*, 2012 U.S. Dist. LEXIS 199143, at *3 (citing *Williams v. Henderson*, 129 F. App'x. 806, 811 (4th Cir. 2005)); *see also Reed,* U.S. Dist. LEXIS 187745, at * 9 ("The Fourth Circuit has affirmed approval of a class with 480 potential members, saying that this number 'easily satisfy[ied] the numerosity requirement.'" (quoting *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993)).

Here, there are 3,775 class members. *See* Agr. at ¶¶ 2.30-32. Joinder, therefore, is impracticable, and the class thus easily satisfies Rule 23's numerosity requirement.

14

**B.     Questions of law and fact are common to the members of the class.**

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied if only one legal or factual issue is shared by all class members." *Temporary Services*, 2012 U.S. Dist. LEXIS 199143, at *4. "The Supreme Court recently clarified that, in order to satisfy the commonality requirement of Rule 23(a), the plaintiff must demonstrate that the class members have suffered the same injury, and that the claim depends upon a common contention that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Arthur*, 2012 U.S. Dist. LEXIS 97933, at *17 (quoting *Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (internal quotation marks omitted)).

Here, the claims of the members of the class stem from the same factual circumstances— the background check process implemented by HKA as part of its hiring procedures, and more specifically, the background check disclosure forms and the alleged lack of implementation of pre-adverse action notice procedures. Common questions, therefore, include whether the forms encompassed by the class violate the FCRA, whether HKA provided pre-adverse action notice to class members, and whether HKA's behavior was willful. Consequently, the class satisfies Rule 23's commonality requirement. *See Singleton*, 976 F. Supp.2d at 675 ("Here, there are numerous questions of law and fact common to the Settlement Classes. These include . . . (1) whether Domino's violated the FCRA by using the BIIC Form to obtain consent from prospective and/or current employees to procure consumer reports for employment purposes, which BIIC form was allegedly not a 'stand-alone document' and included a liability release; 4Link to the text of the note (2) whether Domino's violated the FCRA by failing to provide employees with copies of

their consumer reports and pre-adverse action notice. . . ."); *Hillson v. Kelly Servs.*, No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 8699, at * 46 (E.D.Mich. Jan. 23, 2017) ("Here, there are at least two common contentions that, if resolved, would apply to every class members' claim and substantially advance the litigation: (1) whether Kelly's inclusion of the waiver and disclaimer language on its disclosure forms violated the stand-alone disclosure requirement and, if so, (2) whether the violation was willful.").

C.    **Plaintiff's claims are typical of the claims of the members of the class he represents.**

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of the class. Fed. R. Civ. P. 23(a)(3). The "typicality" requirement seeks to ensure that a representative plaintiff is "part of the class and possess the same interest and suffer the same injury as the class members." *Reed,* U.S. Dist. LEXIS 187745, at * 9 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) (internal quotation marks omitted)).  "The typicality requirement goes to the heart of a representative parties' ability to represent a class and tends to merge with the commonality and adequacy-of-representation requirements." *Id.* at *10 (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (internal quotation marks omitted)).

Plaintiff Moorhead applied for employment with HKA, was provided with a background check disclosure form that is encompassed by the class that is (Plaintiff alleges) deficient under the FCRA, and had an offer of employment withdrawn as a result of information contained in the background check, allegedly without receiving a pre-adverse action notice.  As such, he has claims that are typical of members of the classes.  *See Singleton*, 976 F. Supp.2d at 676 ("Mr. Singleton applied to work as a delivery driver at one of the company's Maryland stores and

completed the BIIC form as part of the application package. . . . [S]everal days later, Mr. Singleton received a letter from Domino's, entitled "FCRA Letter 2," withdrawing the employment offer based, at least in part, on information Domino's obtained from Mr. Singleton's consumer report. . . . The Named Plaintiffs' allegations that Defendant willfully violated the FCRA arise from a unified practice or course of conduct by Domino's, and like the other class members, Named Plaintiffs seek statutory damages for the alleged violations.")

      **D.**    **The questions of law and fact common to the members of the class predominate over any questions potentially affecting only individual members.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 634 (1997). "In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *Temporary Services*, 2012 U.S. Dist. LEXIS 199143, at * 9 (citing *In re Kirschner Medical Corp. Sec. Litig.,* 139 F.R.D. 74, 80 (D.Md. 1991)). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." The liability issue in the case must be "one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at *15 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (internal quotation marks omitted)).

Here, the central legal issues are whether (1) the forms utilized by HKA to obtain consent

for a background check as to some of its potential employees were deficient under the FCRA; (2) whether the alleged lack of pre-adverse action notices to certain prospective employees violates the FCRA; and (3) whether HKA's conduct was willful. This is sufficient to satisfy the predominance requirement. *See Singleton*, 976 F. Supp.2d at 677 (finding predominance where the case-dispositive issues were the sufficiency of the forms, whether pre-adverse action notices were provided, and whether the conduct was willful).

        **E.**       **A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class.**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because Plaintiff seeks to certify classes in the context of a settlement, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no individual member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the members of the class

are the same, and they are all relatively modest. Alternatives to a class action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice.

**III.**     **The parties' notice plan satisfies the requirements of Rule 23 and due process requirements.**

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the *Arthur* Court explained:

> For a binding settlement, the Court must direct the Plaintiffs to give notice in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e). Class members are entitled to know the terms of the agreement. Class members are entitled to a notice which clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Class members are also entitled to notice of the fees and costs being requested by class counsel and given an opportunity to object. Rule 23(h).

*Arthur,* 2012 U.S. Dist. LEXIS 97933, at * 24.

Here, the parties agreed to a robust notice program involving direct postcard mail notice to class members and a dedicated settlement website to be administered by a well-regarded third-party claims administrator— KCC—which has significant experience in the administration of consumer class actions. As such, the notice plan complies with Rule 23 and due process because, *inter alia*, it informs class members of: (1) the nature of the action; (2) the essential

terms of the settlement, including the definition of the class and claims asserted; (3) the binding

effect of a judgment if the class member does not request exclusion; (4) the process to object to,

or to be excluded from, the class, including the time and method for objecting or requesting

exclusion and that class members may make an appearance through counsel; (5) information

regarding Plaintiff's request for an award of attorneys' fees and expenses; (6) the procedure for

submitting claims to receive settlement benefits; and (7) how to make inquiries and obtain

additional information. Fed. R. Civ. P. 23(c)(2)(B)

     In sum, the parties' notice plan ensures that class members' due process rights are amply

protected, and it should be approved. Fed. R. Civ. P. 23(c)(2)(A).

<u>**CONCLUSION**</u>

     Plaintiff respectfully requests that this Court: (1) conditionally approve the parties'

settlement as fair, adequate, reasonable, and within the reasonable range of possible final

approval, (2) appoint Plaintiff as the class representative, (3) appoint Plaintiff's counsel as class

counsel, (4) approve the parties' proposed notice program, and confirm that it is the best

practicable under the circumstances and that it satisfies due process and Rule 23, (5) set a date

for a final approval hearing, (6) set deadlines for members of the settlement class to submit

claims for compensation, and to object to or exclude themselves from the settlement, and (7)

grant such further and other relief the Court deems reasonable and just.

Date:  July 26, 2019

                                    /s/ Dave Maxfield
                                    Dave Maxfield, Attorney, LLC
                                    P.O. Box 11865
                                    Columbia, SC 29211
                                    Phone: 803-509-6800
                                    Fax: 855-299-1656
                                    Email: dave@consumerlawsc.com

Matthew R. Wilson (admitted *pro hac vice*)
Michael J. Boyle, Jr. (admitted *pro hac vice*)
MEYER WILSON CO., LPA
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

SEMNAR & HARTMAN, LLP
Babak Semnar, Esq. (SBN 224890)
Bob@SanDiegoConsumerAttorneys.com
Jared M. Hartman, Esq. (SBN 254860)
Jared@SanDiegoConsumerAttorneys.com
400 S. Melrose Drive, Suite 209
Vista, CA 92081
PH: 619-500-4187
Fax: 888-819-8230

*Attorneys for Plaintiff and the Classes*

**<u>Certificate of Service</u>**

I hereby certify that on July 26, 2019 I served the foregoing to all counsel in this matter via ECF notification:

/s/  *Dave Maxfield*

One of the Attorneys for Plaintiff and the Classes