IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

**JOSEPH MOORHEAD**
*individually and on behalf of all others*
*similarly situated,*

            **Plaintiff,**

    **v.**

**HKA ENTERPRISES, LLC,**

**Defendant.**

**Case No.**: **7:19-cv-00265-DCC**

**District Judge Donald C. Coggins, Jr.**

<u>**PLAINTIFFS' UNOPPOSED MOTION FOR**</u>
<u>**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

# TABLE OF CONTENTS

**Page**

Introduction………………………………………………………………….....  1

Summary of the Settlement………………………...……………………………..  2

Claims Administration………...……………………...…………………………..  4

Response of the Class……...……………………………...……………………….  5

Argument……………………………………………………………………….  6

I.  The Settlement Meets All Requirements For Final Approval Under Rule 23(e)(2)…….....…  6

    A.    The Class Representatives and Class Counsel have adequately represented the Classes …………………………………………………….…........  7

    B.    The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion…………………….………......….…..…....9

    C.    The Settlement provides substantial relief for the Classes…...……....……... 10

        1.    Diverse and substantial legal and factual risks weigh in favor of settlement ..…………….…………………….……………….…. 10

        2.    The monetary terms of this proposed settlement fall favorably within the range of prior FCRA class action settlement….…………… 12

        3.    The method of providing relief is effective and treats all members of the Classes fairly .…………………………………………...….…… 13

    D.    The overwhelmingly positive reaction to the Settlement supports Final Approval………………………………………………………..... 14

  II.  The Parties' Notice Plan Satisfied the Requirements of Rule 23 and Due Process………...……………………………………………………..….…  15

Conclusion……………………….…...……………….…….………………….…  16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arthur v. SLM Corp*, No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) ... 6

*Arthur v. Sun Trust Bank.*, 2012 U.S. Dist. LEXIS 97933 (D.S.C. July 12, 2015) ........... 9, 10, 16

*Ashley v. GAF Materials Corp.,* 2014 U.S. Dist. LEXIS 183679 (D.S.C. Oct. 15, 2014) .......... 11

*Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015). 5

*Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001)............................................. 15

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)............................... 15

*Cross v. Wells Fargo Bank, N.A.* Case No. 1:15-cv-01270, Dkt. No. 86-1 (N.D.Ga.)................. 5

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................ 10

*Daughtrey v. Ocwen Loan Servicing, LLC,* 701 F.App'x 246 (4th Cir. 2017)........................... 11

*Eisen v. Carlisle & Jacquelin*,417 U.S. 156 (1974)................................................................... 16

*Ford v. CEC Entertainment*, 2015 U.S. Dist. LEXIS 191966 (S.D.Cal. Dec. 14, 2015) ........... 12

*Garcia v. Gordon Trucking, Inc.*, No. 1:10- CV-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012)........................................................................................................................... 14

*Grady v. de Ville Motor Hotel, Inc.*,415 F.2d 449 (10th Cir. 1969) .......................................... 12

*Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012)....................................................................................................................................... 6

*Grice v. PNC Mortg. Corp. of America*, 1998 U.S. Dist. LEXIS 23875 (D. Md. May 21, 1998) . 8

*Hall v. Frederick J. Hanna & Assocs., P.C.*, No. 15-3948, 2016 WL 2866081 (N.D. Ga. May 10, 2016)....................................................................................................................................... 7

*Hanlon v. Chrysler Corp.*,150 F.3d 1011 (9th Cir. 1998) .......................................................... 12

*Hillson v. Kelly Servs.*, 2017 U.S. Dist. LEXIS 127717 (E.D.Mich. Aug. 11, 2017) ................. 12

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000)...... 15

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011)................................. 10

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)...................... 11, 13

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991)........................................................ 6, 8

*In re Mi Windows & Doors Prods. Liab. Litig..,* 2015 U.S. Dist. LEXIS 184471 (D.S.C. July 22, 2015)....................................................................................................................................... 12

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998)............................................. 7

*In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000).................................. 9

*Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ..................... 10

*Kirven v. Cent. States Health & Life Co.,* 2015 U.S. Dist. LEXIS 36393 (D.S.C. Mar. 23, 2015) 9

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ................................................. 6

*Manuel v. Wells Fargo Bank*, 2016 U.S. Dist. LEXIS 33708 (E.D.Va. Mar. 15, 2016) .............. 12

*Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014)................................................................................................................................... 6

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J. Sept. 14, 2009).............................. 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).......... 15

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ......................................... 15

*Reed v. Big Water Resort, LLC,* 2016 U.S. Dist. LEXIS 187745 (D.S.C. May 26, 2016) ......... 6, 7

*Robinson v. Carolina First Bank, N.A.,* 2019 U.S. Dist. LEXIS 26450 (D.S.C. Feb. 14, 2019).... 9

*Rowles v. Chase Home Fin.*, 2012 U.S. Dist. LEXIS 3264 (D.S.C. Jan. 10, 2012) ..................... 11

*S. Carolina Nat. Bank v. Stone,* 139 F.R.D. 325 (D.S.C. 1991) ...................................................... 9

*S. Carolina Nat. Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990).................................................. 7

*Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).......... 11

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ......... 10

*Singleton v. Domino's Pizza*, 976 F. Supp. 2d 665 (D. Md. 2013) ................................................ 13

*Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499 (E.D. Va. 1995)). ................................. 8

*Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013).... 5

*Temporary Services, Inc.. v. Am. Int'l Grp., Inc.,* 2012 U.S. Dist. LEXIS 199143 (D.S.C. July 31, 2012).......................................................................................................................... 8, 13

*Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015).... 5

## Statutes

15 U.S.C. § 1681b(b)(3)(A) ............................................................................................................. 1

## Other Authorities

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010)........................................................................................................ 4

McLaughlin on Class Actions (8th ed. 2011) .................................................................................. 9

## Rules

Fed. R. Civ. P. 23(c)(2)(A) ............................................................................................................ 16

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................ 15

Fed. R. Civ. P. 23(e)(1)................................................................................................................... 15

Fed. R. Civ. P. 23(e)(2)................................................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(ii)........................................................................................................ 14

## <u>INTRODUCTION</u>

Plaintiff Joseph Moorhead ("Plaintiff") and Defendant HKA Enterprises, LLC ("HKA"), with the assistance of an experienced and highly respected mediator, Hunter Hughes of Atlanta, Georgia, settled a class action regarding HKA's use of background checks as part of its hiring process. Plaintiff and the Class Members alleged that they were presented with a deficient background check consent form, were not provided with a pre-adverse action notice, or, as in the case of Mr. Moorhead, both, in violation of the provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2) & § 1681b(b)(3)(A). The parties were able to quickly hone in on the precise contours of the case, and agreed to an all-cash settlement for the benefit of three settlement classes.

After this Court granted preliminary approval of the Settlement, and pursuant to the notice plan the Court approved, direct individual notice of the Settlement was disseminated to the members of the Settlement Classes. The reaction of the class to this settlement has been overwhelmingly and uniformly positive. Most importantly, despite the fact that the members of the class received *direct, personal notice* (in addition to publication notice via the Settlement website), not a single class member registered an objection to any part of it: not to the sufficiency of the notice, not to the substantive relief, not to the request for attorneys' fees and costs. Approximately 8% of the class members who were eligible to file claims have done so. That is, a high claims rate in a case like this one, and not a single class member has chosen to opt-out of the Settlement. Similarly, after direct notice under CAFA to each state attorney general's office, no attorney general, nor the Attorney General of the United States, has objected in any way.

Such unanimity is unsurprising. The Settlement is an excellent result for the Classes, particularly in view of the risks and delays involved in continued litigation. Class Counsel

estimates[1] that each Class Member who made a claim will receive at least *$412 in compensation*. That represents over 41% of the maximum statutory recovery had each such claimant filed, and prevailed in, his or her own individual claim. Here, of course, the claimants needed merely to file a simple claim form, rather than hire their own lawyer and file and win a lawsuit.

Considering the overwhelmingly favorable support for the Settlement from the class members, and the significant relief to those class members who made a claim, Plaintiff respectfully requests that this Court grant final approval of the Settlement, approve Plaintiffs' motion for attorneys' fees and cost, and for an incentive award for Mr. Moorhead (moved for separately) in its entirety, and enter a final judgment and order dismissing this case.

HKA does not oppose this motion.

## SUMMARY OF THE SETTLEMENT[2]

The settlement calls for HKA to create a cash settlement fund of $450,000, *see* Dkt. No. 37-1, ¶ 2.35, to compensate the following class members:

**Settlement Class A:**  all natural persons residing within the United States and its Territories with respect to whom, within two years prior to the filing of this action and extending through the resolution of this action, HKA procured or caused to be procured a consumer report for employment purposes based on a disclosure form from one or more of the following background check vendors: AWSI, Backgroundchecks.com, ESS (the vendor applicable to Moorhead), and GIS.  The parties agree that there are 3,634 members of Settlement Class A as identified by HKA.

**Settlement Class B:** all natural persons residing within the United States and its Territories: (1) within two years prior to the filing of this action and extending through the resolution of this action; (2) who were the subject of a background report procured or caused to be procured by HKA based on a disclosure form other than that from the following background check vendors: AWSI, Backgroundchecks.com, ESS (the vendor

---

[1] This amount assumes that the Court elects to grant Plaintiff's Unopposed Motion for Attorneys' Fees, Expenses, and Incentive Award in full. *See* Dkt. No. 39.

[2] Any undefined capitalized terms shall have the meaning attributed to them in the parties' Settlement Agreement, which is being submitted contemporaneously herewith.

applicable to Moorhead), and GIS; (3) that was used to make an adverse employment decision regarding such employee or applicant for employment; and (4) who HKA failed to notify of a forthcoming adverse action and/or failed to provide the applicant an understandable copy of his or her consumer report or a copy of the FCRA summary of rights before it took such adverse action.  The parties agree that there are 68 individuals who are members of Settlement Class B as identified by HKA.

**Settlement Class C:** all natural persons residing within the United States and its Territories: (1) within two years prior to the filing of this action and extending through the resolution of this action; (2) who were the subject of a background report procured or caused to be procured by HKA based on a disclosure form from one or more of the following background check vendors: AWSI, Backgroundchecks.com, ESS (the vendor applicable to Moorhead), and GIS; (3) that was used to make an adverse employment decision regarding such employee or applicant for employment; and (4) who HKA failed to notify of a forthcoming adverse action and/or failed to provide the applicant an understandable copy of his or her consumer report or a copy of the FCRA summary of rights before it took such adverse action.  The parties agree that there are 73 individuals who are members of Settlement Class C as identified by HKA.

The "Class Period" is defined as October 30, 2016 through June 25, 2019. *Id.* at ¶ 2.10. Settlement Class Members were sent notice by the settlement administrator by mail. *Id.* at ¶ 3.D.

The Settlement Fund will be allocated as follows: first, payments of settlement costs approved by the Court, which include the costs of notice and claims administration, attorneys' fees and expenses that the Court approves, and any incentive award to the Class Representative that this Court approves. *Id.* at ¶ 3.C.1.  Next, each member of the respective classes who makes a timely and valid claim will be allocated a presumptive award based on class membership-- $62.67 for each member of Class A, $125.34 for each member of Class B, and $188.02 for each member of Class C.  *Id.* at ¶ 3.F.1.  Then, because the total amount to be paid to members of all three classes is less than half of the amount remaining in the Settlement Fund after attorneys' fees and costs, any incentive award, and claims administrator's fees are deducted, each Class Member who made a claim will receive a pro-rated, proportional "settlement enhancement" to bring the amount paid to Class Members to the one-half threshold.  *Id.* at ¶ 3.G.1-2.  Here, assuming the Court elects to grant Plaintiff's unopposed request for attorneys' fees, expenses,

and incentive award in full, the Net Settlement Fund will be approximately $123,284. Dividing this among class members who made claims will yield settlement payment of of $412.32 to members of Class A, $824.64 to members of Class B, and $1,236.96 to members of Class C.

Class Members will only release claims specifically tailored to the practices that give rise to this matter. In particular, the release is limited to the class members identified during the applicable class period and is limited to the facts that arise out of or relate to the facts or claims in this Action. *Id.* at ¶ 3.H.

## CLAIMS ADMINISTRATION

On August 6, 2019, this Court granted preliminary approval to the settlement. Dkt. No. 37. After a bidding process to ensure that settlement administration would be accomplished in a cost-effective manner, the parties retained KCC as settlement administrator and directed KCC to implement a comprehensive notice plan for class members. *See* Dkt. No. 37 at ¶ 7 (ordering notice to class members).

Pursuant to this notice plan, KCC mailed 3,526 Notice Packets to members of the Classes. Ex. A, Declaration of Robert Coomes, at ¶¶ 4. Of those, 575 notices were returned as undeliverable, and through a search of various publicly available sources, KCC was able to re-mail 366 of those notices to the best available forwarding address. *Id.* at ¶ 5. As a result, at least 94% of mailed notices have, as best as the parties can determine, reached class members. That easily exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010) , *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class

4

notice instructs that class notice should strive to reach between 70% and 95% of the class.")

In addition to the direct mailed notice, KCC also established a website, www.MoorheadHKAFCRA.com, by which potential class members could view settlement documents and make claims. *Id.* at ¶¶ 6.

Finally, KCC provided notice to relevant governmental entities pursuant to the Class Action Fairness Act ("CAFA"). *Id.* at ¶ 2. No government entities have voiced any disagreement with any aspect of the settlement.

## RESPONSE OF THE CLASS

Pursuant to the Court's preliminary approval order, class members had until November 4, 2019, to submit a claim under the settlement. Dkt. No. 37, at ¶ 17. As of the date of this motion, KCC has received a total of 285 claims.[3] Ex. A, Declaration of Coomes, at ¶ 7. This represents a combined claims rate of 8%, a high rate for class settlements of this type. Claims rates in consumer class actions like this one are often well under 10%, and often under 5%, especially in cases in which the per-capita recovery for each class member is relatively modest. *See, e.g., Cross v. Wells Fargo Bank, N.A.,* Case No. 1:15-cv-01270, Dkt. No. 86-1 (N.D.Ga.) (settlement approved with a claims rate of 6.7%) (Thrash, J.); *Bayat v. Bank of the West,* No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the

---

[3] 276 Claims from members of Class A, 2 from members of Class B, and 6 from members of Class C. In addition, KCC received one claim that was made on a timely basis but was from an individual who was not listed on KCC's class lists. Declaration of Coomes, at ¶ 7. Upon review of the claim and the individual, the parties have stipulated that this claim should be accepted, and based on the employment history of that individual with HKA, that the individual should be included in Class A for settlement award purposes.

class[] filed a timely claim"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.,* No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.,* No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp.*, P.C., No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

Moreover, not a single class member objected to the settlement or chose to opt-out.  Ex. A, Declaration of Coomes, at ¶¶ 8-9.  This represents an overwhelmingly positive response to the class settlement from the class of persons who stand to benefit.

## ARGUMENT

## I.    THE SETTLEMENT MEETS ALL REQUIREMENTS FOR FINAL APPROVAL UNDER RULE 23(e)(2)

"Rule 23(e) requires that the court approve any proposed settlement or compromise in a class action suit after notice of the settlement be given to all class members, after a hearing, and after finding that the settlement is fair, reasonable, and adequate.'" *Reed v. Big Water Resort, LLC,* Case No. 2:14-cv-01583, 2016 U.S. Dist. LEXIS 187745, at * 14 (D.S.C. May 26, 2016) "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

Rule 23 – and particularly the portions dealing with class settlements – was amended in December, 2018. The first step in the amended process is a preliminary fairness determination, which the Court conducted in August, 2019.  *See* Dkt. No. 37.  After class notice, the second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); *also* Manual for

Complex Litigation, § 21.633-34; *Geissler v. Sterling*, No. 4:17-cv-01746, 2019 U.S.Dist. LEXIS 131110, at * 9 (D.S.C. Aug. 5, 2019). Where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding by the Court that the Settlement is fair, reasonable, and adequate, based on the following factors:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## A. The Class Representatives and Class Counsel have Adequately Represented the Classes.

By their very nature, because of the significant uncertainty of outcome, difficulty of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, "[t]here is a 'strong judicial policy in favor of settlements, particularly in the class action context.'" *Reed,* 2016 U.S. Dist. LEXIS at *14 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also S. Carolina Nat. Bank v. Stone*, 749 F. Supp. 1419, 1428 (D.S.C. 1990) ("settlement classes have proved to be quite useful in resolving major class action disputes...most courts have recognized their utility and have authorized the parties to seek to compromise their differences including class action issues through this means.") This matter is no exception.

Against this backdrop, courts consider "the posture of the case at the time settlement was

proposed" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating." *Jiffy Lube,* 927 F.2d at 159. At the same time, "District courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair." *Temporary Services, Inc.. v. Am. Int'l Grp., Inc.,* Case No. 3:08-cv-00271, 2012 U.S. Dist. LEXIS 199143, at **27-28 (D.S.C. July 31, 2012) (citing *Grice v. PNC Mortg. Corp. of America*, No. CIV. A. PJM-97-3084, 1998 U.S. Dist. LEXIS 23875, 1998 WL 350581 (D. Md. May 21, 1998); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995)).

As set forth in more detail in Plaintiffs' Brief in Support of Preliminary Approval, although the case settled at an early stage of the proceedings, the parties were fully informed of the relevant facts in the case.  Prior to mediation, HKA provided copies of *all* of the relevant disclosure forms used by HKA during the course of the Class Period to Plaintiff's counsel, not just the ones that ultimately became part of the Settlement.  In addition, HKA provided numerical data regarding the size of all the proposed classes, including data on the number of potential employees who did not receive pre-adverse action notices.  Moreover, before mediating, the parties briefed, in mediation statements they shared with one another and the mediator, the strengths and weaknesses of their respective positions. As such, the parties conducted "sufficient informal discovery and investigation to fairly evaluate the merits of [the d]efendants' positions during settlement negotiations." *Strang*, 890 F. Supp. at 501-02.

In addition, a plaintiff and class counsel are adequate if "[counsel] fairly and adequately represent the interests of the class," and the plaintiff's "injuries are sufficiently similar to the injuries of the class members such that she is able to advance the claims of the entire class through proof of her own claim." *Robinson v. Carolina First Bank, N.A.,* Case No. 7:18-cv-

02927, 2019 U.S. Dist. LEXIS 26450, at \*\*18-20 (D.S.C. Feb. 14, 2019).

Here, Plaintiff's claims are aligned with the claims of the other class members. He had every incentive to vigorously pursue the claims of the class, as he has done by hiring experienced class action and consumer plaintiffs' counsel, by remaining actively involved in this matter since its inception, by participating in discovery, and by remaining involved in the settlement process.

"The adequacy of Plaintiff's counsel, like that of the individual Plaintiff, is presumed in the absence of specific proof to the contrary." *S. Carolina Nat. Bank v. Stone,* 139 F.R.D. 325, 330-31 (D.S.C. 1991); *see also Kirven v. Cent. States Health & Life Co.,* Case No. 3:11-cv-2149, 2015 U.S. Dist. LEXIS 36393, at \* 14 (D.S.C. Mar. 23, 2015) ("While the opinions and recommendations of experienced counsel are not to be blindly followed by the trial court, such opinions should be given weight in evaluating the proposed settlement.").

Here, Plaintiff believes that the Settlement is fair, reasonable, and adequate, and is in the best interests of the members of the class. Plaintiff also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to a litigated class certification motion, summary judgment, trial, and appeal.

**B.     The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also Arthur v. Sun Trust Bank.*, Case No. 8:09-cv-00415, 2012 U.S. Dist. LEXIS 97933, at \* 9 (D.S.C. July 12, 2015) ("Courts will take into account whether a settlement was reached with the assistance of a respected and experienced mediator."); *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive

manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator[.]")[4]

Here, the Settlement resulted from good faith, arm's-length settlement negotiations, culminating in an in-person mediation session with Hunter Hughes. *See* Agr. at ¶ 1.C. Plaintiffs and HKA submitted detailed mediation submissions to Mr. Hughes and to one another setting forth their respective views as to the strengths of their cases. *Id.* Accordingly, it is clear that the parties negotiated their settlement at arm's-length, and absent any fraud or collusion. *See Arthur,* 2012 U.S. Dist. LEXIS 97933, at * 9 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator). Moreover, Mr. Hughes has mediated thousands of cases, including many FCRA background check class action cases similar to this one.

**C.      The Settlement Provides Substantial Relief for the Classes**

The Settlement in this matter is fair, reasonable, and adequate, as demonstrated by the overwhelmingly positive response of class members.

**1.      Diverse and substantial legal and factual risks weigh in favor of settlement.**

---

[4] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]"); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

The Court must also consider "the likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ashley v. GAF Materials Corp.,* Case No. 8:11-mn-02000, 2014 U.S. Dist. LEXIS 183679, at * 22 (D.S.C. Oct. 15, 2014) (approving a settlement where "[t]he Settlement provides the Settlement Class with an immediate and substantial source of recovery while eliminating risks to the Settlement Class that further litigation would yield little or no recovery.")

With this in mind, while Plaintiff strongly believes in his claims, Plaintiff understands that HKA asserts some potentially case-dispositive defenses. For example, HKA contends that Plaintiff cannot establish that it willfully violated the FCRA, which could limit any recovery to actual damages suffered as a result of the violation.  *See Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) (defining "willfulness" under the FCRA to include "reckless disregard" of statutory obligations); see also *Daughtrey v. Ocwen Loan Servicing, LLC,* 701 F.App'x 246, 253 (4th Cir. 2017) ("A defendant may demonstrate reckless disregard of its statutory obligations by repeatedly ignoring warning signs that it is violating the law and by failing to take corrective action to prevent future violations.")  Likewise, if damages were limited to actual damages, individualized questions would represent a potential impediment to class certification.

Accordingly, Plaintiff's decision to settle his claims, and the claims of the members of the class, is reasonable. *See Rowles v. Chase Home Fin.*, Case No. 9:10-cv-01756, 2012 U.S. Dist. LEXIS 3264, at * 7 (D.S.C. Jan. 10, 2012) ("[t]he Parties dispute the validity of the claims in this litigation, and their dispute underscores not only the uncertainty of the outcome but also why the Court finds the Settlement Agreement to be fair, reasonable, adequate, and in the best interests of

11

the Class Members.").

> **2.**    **The monetary terms of this proposed settlement fall favorably within the range of prior FCRA class action settlements.**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Mi Windows & Doors Prods. Liab. Litig..,* Case No. 2:12-mn-00001, 2015 U.S. Dist. LEXIS 184471, at *38 (D.S.C. July 22, 2015) (noting that recoveries a proposed resolution must be evaluated in light of the fact that "a settlement is a compromise. . . .")

Here, the parties agreed to resolve this matter for a settlement fund of $450,000, under which each class member who made a claim stands to receive at least $430. This figure compares very favorably with other FCRA class action settlements involving background check disclosure forms that courts have approved. *See, e.g., Hillson v. Kelly Servs.*, No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 127717 (E.D.Mich. Aug. 11, 2017) (approximately $30.51 per class member); *Manuel v. Wells Fargo Bank*, Case No. 3:14-cv-00238, 2016 U.S. Dist. LEXIS 33708 (E.D.Va. Mar. 15, 2016) ($35 per class member); *Ford v. CEC Entertainment*, No. 14-cv-00677, 2015 U.S. Dist. LEXIS 191966 (S.D.Cal. Dec. 14, 2015) ($38 per class member);

*Singleton v. Domino's Pizza*, 976 F. Supp. 2d 665 (D. Md. 2013) ($54.75 per class member).[5]

Under the terms of the Settlement, those class members who make a claim are entitled to a minimum of one half of the total settlement fund after the subtraction of attorney's fees and expenses, administration fees, and any incentive award to the class representative. *See* Dkt. No. 37-1, ¶ 3.G.1. Plaintiff estimates that (assuming the Court elects to grant Plaintiff's unopposed request for attorneys' fees, expenses, and incentive award in full) that Net Settlement Fund will be $123,284. Dividing this among class members who made claims yields a total settlement payment of $412.32 to members of Class A, $824.64 to members of Class B, and $1,236.96 to members of Class C.

The parties' settlement, therefore, easily falls within "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see also Temporary Services,* 2012 U.S. Dist. LEXIS 199143, at *15 ("[t]here was a substantial risk that this case would conclude adversely to the interests of the Plaintiffs and the class, thus any compromise accepted by the Plaintiffs in agreeing to the sum of this settlement reflected the risks inherent in continuing litigation.").

    **3.**    **The method of providing relief is effective and treats all members of the Classes fairly.**

---

[5] Although some other background check class settlements have paid class members (low) amounts without using a claims process, the parties here instead elected to distribute the funds to the persons in the class who affirmatively made a claim. That choice resulted in a *much higher* payout for those persons who went to the trouble to make a claim than if the parties had structured the Settlement differently. Plaintiff's view is that paying relatively fewer persons more money is more meaningful relief overall than paying relatively more people a very small amount.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member relief: cash payments. Moreover, the allocation of the Settlement Fund among the Classes is straightforward. Members of Class A were exposed to allegedly deficient consent forms, and thus receive the baseline award of one "share" of the settlement recovery. Members of Class B, who were not subject to the deficient forms but who were deprived of a chance to challenge any possible errors on their background as a result of not receiving the "pre-adverse action notice" suffered a more significant harm than members of Class A (in the form of a potential lack of an employment opportunity). As such, Members of Class B receive two "shares" of the recovery. Finally, members of Class C are individuals (such as the Plaintiff) who fit into both categories—were subject to the contested consent forms *and* who did not receive a pre-adverse action notice. Members of Class C receive three "shares" of the settlement, or said another way, the amount received by the members of Class A and Class B combined.

**D.      The overwhelmingly positive reaction to the settlement supports final approval.**

As a result of the notice that KCC distributed, 286 members of the Classes submitted claims, and not a single one objected to it. *See* Exhibit A, ¶¶ 8-9. This overwhelmingly favorable reaction to the Settlement supports its final approval. *See Garcia v. Gordon Trucking, Inc.*, No.

1:10- CV-0324 AWI SKO, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV*, *Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001)  ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Here, there were not "few" objections to the settlement—there were no objections.  Class members responded in above-expected numbers, yet none of them objected to the settlement. This reveals a settlement that satisfied the persons that it sought to benefit.  This is how class action settlements are supposed to work.

## II.     THE NOTICE PLAN SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.

Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B).

15

"[B]est notice practicable" means "individual notice to all members who can be identified

through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  As the

*Arthur* Court explained:

> For a binding settlement, the Court must direct the Plaintiffs to give notice in a reasonable
> manner to all class members who would be bound by the proposed settlement. Fed. R.
> Civ. P. 23(e). Class members are entitled to know the terms of the agreement. Class
> members are entitled to a notice which clearly and concisely states in plain, easily
> understood language: (i) the nature of the action; (ii) the definition of the class certified;
> (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance
> through an attorney; (v) that the court will exclude from the class any member who
> requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the
> binding effect of a class judgment on members under Rule 23(c)(3). Class members are
> also entitled to notice of the fees and costs being requested by class counsel and given an
> opportunity to object. Rule 23(h).

*Arthur,* 2012 U.S. Dist. LEXIS 97933, at * 24.

But here, direct mail notice was successfully delivered to at least 94% of the members of

the Class.  Ex. A, at ¶¶ 5-6.  The notice program in this case far exceeds the minimum due

process requirements.  Moreover, the strength of the notice program can be seen in the claims

rate of 8%, which is on the "high side" of class action settlements of this type.

## **CONCLUSION**

Plaintiff respectfully submits that the Settlement in this matter is an excellent result for

class members, and the unanimous response from class members shows that they agree.  For this

and the foregoing reasons, Plaintiff respectfully requests that the Court approve the Settlement

and enter a final judgment and order.


Date:  November 19, 2019                  /s/ Dave Maxfield
                                          Dave Maxfield, Attorney, LLC
                                          P.O. Box 11865
                                          Columbia, SC 29211
                                          Phone: 803-509-6800
                                          Fax: 855-299-1656

Email: dave@consumerlawsc.com

Matthew R. Wilson (admitted *pro hac vice*)
Michael J. Boyle, Jr. (admitted *pro hac vice*)
MEYER WILSON CO., LPA
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

SEMNAR & HARTMAN, LLP
Babak Semnar, Esq. (SBN 224890)
Bob@SanDiegoConsumerAttorneys.com
Jared M. Hartman, Esq. (SBN 254860)
Jared@SanDiegoConsumerAttorneys.com
400 S. Melrose Drive, Suite 209
Vista, CA 92081
PH: 619-500-4187
Fax: 888-819-8230

*Attorneys for Plaintiff and the Classes*

17

## Certificate of Service

I hereby certify that on November 19, 2019 I served the foregoing to all counsel in this matter via ECF notification:

/s/  *Dave Maxfield*

One of the Attorneys for Plaintiff and the Classes